UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| CK, by his Next Friend<br>Marisa Springstead, | Case No:  20-13301 |
|  | Honorable David M. Lawson |
| Plaintiffs, |  |
| v | Mag. Judge R. Steven Whalen |
| OAKLAND COMMUNITY HEALTH<br>NETWORK; DANA LASENBY, Director of<br>Oakland Community Health Network,<br>in her official capacity; MICHIGAN<br>DEPARTMENT OF HEALTH AND HUMAN<br>SERVICES; ROBERT GORDON, Director of<br>Michigan Department of Health and<br>Human Services in his official capacity;<br>and GRETCHEN WHITMER, Governor of Michigan,<br>in her official capacity; | **PLAINTIFFS' MOTION<br>FOR A TEMPORARY<br>RESTRAINING ORDER<br>AND PRELIMINARY<br>INJUNCTION**<br><br>**ORAL ARGUMENT<br>REQUESTED** |
| Defendants. |  |

_____/

Simon Zagata (P83162)
Chris E. Davis (P52159)
Disability Rights Michigan
Attorneys for Plaintiff
4095 Legacy Parkway
Lansing, MI 48911
(517) 487-1755
szagata@drmich.org
cdavis@drmich.org

Stephanie M. Service (P73305)
Precious S. Boone (P81631)
Attorney for State Defendants
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
Services3@michigan.gov
boonep3@michigan.gov
_____/

Matthew J. Boettcher (P40929)
Plunkett Cooney
Attorneys for Defendants
Oakland Community Health Network
And Dana Lasenby
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4035
mboettcher@plunkettcooney.com

## <u>PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Pursuant to Local Rule 7.1(a), on January 27, 2021, Plaintiffs' attorneys contacted Defendants' counsel, seeking their concurrence on this Motion. Defendants did not concur in the Motion. Plaintiffs move for a preliminary injunction and temporary restraining order pursuant to Fed. R. Civ. P. 65. Plaintiffs make this Motion on the grounds that:

1. Plaintiffs are likely to prevail on the merits of his claim.

2. Plaintiffs will suffer irreparable harm if preliminary relief is not granted.

3. Defendants will not be harmed by the relief sought. Plaintiffs simply ask the Court to enforce a settlement that Defendants committed to in a previous case.

4. The relief Plaintiffs seek will ensure Plaintiff receives medically necessary Medicaid services. No monetary relief can replace those services and no adequate remedy at law exists.

5. Granting the relief sought serves the public interest. Plaintiffs request that this Court issue a temporary restraining order a preliminary injunction to:

   a. Enjoin Defendants from refusing to comply with the terms of the settlement agreement reached in case 2:17-CV-11988.

b.      Preliminarily and Permanently enjoin Defendant Oakland Community Health Network (OCHN) from failing to enforce contract provisions with Macomb-Oakland Regional Center (MORC) that require MORC to use their own staff to provide Plaintiff's CLS and Respite services.

c.      Preliminarily and Permanently enjoin Defendants OCHN and Michigan Department of Health and Human Services (MDHHS) from failing to provide Intensive Crisis Stabilization Services to Plaintiff.

d.      Grant such other and further relief as may be just and proper.


Respectfully submitted,


Dated: February 3, 2021          s/Simon Zagata_____
                                 Simon F. Zagata (P83162)
                                 Chris E. Davis (P52159)
                                 Disability Rights Michigan
                                 Attorneys for Plaintiffs
                                 4095 Legacy Parkway
                                 Lansing, MI 48911
                                 (517) 487-1755

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

CK, by his Next Friend
Marisa Springstead,

     Plaintiffs,

v

OAKLAND COMMUNITY HEALTH
NETWORK; DANA LASENBY, Director of
Oakland Community Health Network,
in her official capacity; MICHIGAN
DEPARTMENT OF HEALTH AND HUMAN
SERVICES; ROBERT GORDON, Director of
Michigan Department of Health and
Human Services in his official capacity;
and GRETCHEN WHITMER, Governor of Michigan,
in her official capacity;

     Defendants.

_____/

Case No:  20-13301

Honorable David M. Lawson

Mag. Judge R. Steven Whalen

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION**
**FOR A TEMPORARY**
**RESTRAINING ORDER**
**AND PRELIMINARY**
**INJUNCTION**

Simon Zagata (P83162)
Chris E. Davis (P52159)
Disability Rights Michigan
Attorneys for Plaintiff
4095 Legacy Parkway
Lansing, MI 48911
(517) 487-1755
szagata@drmich.org
cdavis@drmich.org

Stephanie M. Service (P73305)
Precious S. Boone (P81631)
Attorney for State Defendants
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
Services3@michigan.gov
boonep3@michigan.gov

_____/

Matthew J. Boettcher (P40929)
Plunkett Cooney
Attorneys for Defendants
Oakland Community Health Network
And Dana Lasenby
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4035
mboettcher@plunkettcooney.com

# **TABLE OF CONTENTS**

Index of Authorities ............................................................................................ii

Statement of Issues Presented ..........................................................................iii

Most Appropriate Authority ..............................................................................iv

Introduction ........................................................................................................1

    I.      Argument ................................................................................................1

          A.    PLAINTIFF IS SUFFERING AND WILL CONTINUE TO
               SUFFER IRREPARABLE HARM IN THE ABSENCE OF
               PRELIMINARY RELIEF ...............................................................1

          B.    PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS ........7

          C.    THE BALANCE OF EQUITIES WEIGHS IN PLAINTIFF'S
               FAVOR ..........................................................................................11

          D.    GRANTING THIS MOTION IS IN THE PUBLIC INTEREST..12

Conclusion ........................................................................................................13

Certificate of Service .......................................................................................14

i

## INDEX OF AUTHORITIES

*Aro Corp. v. Allied Witan Co.*
    531 F.2d 1368, (6th Cir. 1994) ...............................................................12

*Bontrager v. Indiana Fam. and Soc. Servs. Admin.*
    697 F.3d 604 (7th Cir. 2012) ...........................................................11, 12

*Crawley v. Ahmed*
    08-14040, 2009 WL 1384147 at *28 (E.D. Mich. May 14, 2009) ...........1

*Erickson v. Dart Oil & Gas Corp.*
    189 Mich. App. 679 (Mich. Ct. App. 1991) ...........................................10

*Fishman v. Paolucci*
    628 F. App'x 797, (2d Cir. 2015) ..............................................................1

*Hisaw v. Hayes*
    133 Mich. App. 639 (Mich. Ct. App. 1984) ...........................................10

*Markva v. Haveman*
    168 F. Supp. 2d 695, (E.D.Mich. 2001), *aff'd*, 317 F.3d (6th Cir. 2003) .................1

*Obama for America v. Husted*
    697 F.3d 423 (6th Cir. 2012) ...................................................................2

*Schweiker v. Hogan*
    457 U.S. 569 (1982)...............................................................................12

*Waskul v. Washtenaw County Community Mental Health*
    979 F.3d 426, (6th Cir. 2020) ...................................................................7

## Statutes:

M.C.L. § 330.1208 .........................................................................................9
M.C.L. § 400.109f...........................................................................................9
42 U.S.C. § 1396u-2(a)(1)(B)(i) .....................................................................9

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.    Are there grounds for this Court to issue a Temporary Restraining Order or Preliminary Injunction requiring Defendants to provide the medically necessary services in C.K.'s IPOS?

Plaintiff Answers:   Yes

Defendants Would Answer:  No

## <u>MOST APPROPRIATE AUTHORITY</u>

*Markva v. Haveman*, 168 F. Supp. 2d 695, 718 (E.D.Mich. 2001) ................................ 1

*Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012) ........................................ 2

## INTRODUCTION

Plaintiff is a 15-year-old Medicaid beneficiary. Plaintiff is authorized to receive home and community-based services through the Medicaid State Plan. Plaintiff lives in Oakland County and is a service recipient through Macomb Oakland Regional Network (MORC) and Oakland Community Health Network (OCHN). In June of 2017, Plaintiff sued Michigan Department of Health and Human Services (MDHHS), OCHN, OCHN's executive director Willie Brooks, MDDHS' director Nick Lyon and Governor Rick Snyder, alleging violations of the Rehabilitation Act and the Americans with Disabilities Act.

In April of 2018, the parties reached a settlement agreement resolving all claims. On April 24, 2018, the Honorable David M. Lawson issued an Order approving the settlement, dismissing the case and retaining jurisdiction to enforce the terms of the settlement. The settlement agreement required, among other things, OCHN to enforce contract provisions with MORC and Medicaid service providers that ensured provision of the Community Living Supports (CLS) and Respite services in Plaintiff's Individual Plan of Service (IPOS).

Plaintiff's mother and next friend contacted Disability Rights Michigan (DRM) in August of 2020 to inform DRM that Defendants breached the settlement agreement. Plaintiff has been without the CLS and Respite services in his IPOS since the beginning of March 2020. In communications with Defendants, DRM

1

discovered that Defendants never entered into the contractual terms required in the settlement agreement. Based on Defendants' breach of the settlement, Plaintiff brought action to enforce the terms of the agreement. Plaintiff now brings this Motion to avoid irreparable harm caused by Defendants' continued breach of the settlement agreement.

## I.      ARGUMENT

Plaintiff is entitled to a preliminary injunction and a temporary restraining order because (1) he is likely to suffer irreparable harm in the absence of preliminary relief; (2) he is likely to succeed on the merits; (3) the balance of equities tips in Plaintiff's favor; and (4) an injunction is in the public interest. *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012).

### A.    PLAINTIFF IS SUFFERING AND WILL CONTINUE TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

Plaintiff is currently living with his mother and grandmother in his grandmother's home. (Exhibit 1). Plaintiff is suffering and will continue to suffer great harm without the medically necessary home and community-based services he requires. Medicaid is an essential source of support intended to enable Michigan's most vulnerable families and children to secure crucial health care, without which one would suffer physical or mental harm – or forgo other necessities of life in an attempt to maintain a healthy level of care. Defendants'

2

failure to comply with the terms of the settlement agreement seriously threatens Plaintiff's health, his mother's health, and increases his risk of institutionalization. (Exhibit 1).

Harm caused from delayed medical care is not readily calculable nor fully compensable, and courts routinely recognize that "denial or delay in benefits which effectively prevents plaintiffs from obtaining needed medical care constitutes irreparable harm. In other words, risk of further injury to health warrants injunctive relief". *Markva v. Haveman*, 168 F. Supp. 2d 695, 718 (E.D.Mich. 2001), *aff'd*, 317 F.3d (6th Cir. 2003); *Crawley v. Ahmed,* 08-14040, 2009 WL 1384147 at *28 (E.D. Mich. May 14, 2009) ("it is undeniable that unpaid bills, loss of needed medical assistance, and ultimately poor health suffered by Plaintiffs cannot be adequately addressed by the promise of future Medicaid coverage."); *Fishman v. Paolucci*, 628 F. App'x 797, 801 (2d Cir. 2015) ("A lack of medical services is exactly the sort of irreparable harm that preliminary injunctions are designed to address.")

Plaintiff has diagnoses of Autism Spectrum Disorder, Disruptive Mood Dysregulation Disorder, ADD, Moderate Intellectual Disability and Obsessive-Compulsive Disorder. (Exhibit 1). The medically necessary services authorized in Plaintiff's IPOS include CLS, Respite, and should include Intensive Crisis Stabilization Services (ICSS). (Exhibit 2). ICSS services are performed by a

mobile ICSS team to prevent psychiatric admission and keep the child in their home.[1] Plaintiff's CLS services are designed to promote community inclusion and increase his ability to function independently. Plaintiff's respite services are essential to prevent caregiver burnout and keep his living situation stable. (Exhibit 2).

Plaintiff did not file this Motion immediately because CK received CLS services from January 4 to January 19, 2021. (Exhibit 1).  Since that time, Defendants have told Plaintiff that they are searching for CLS and respite providers, but no services are in place. From March of 2020 until this filing, Plaintiff went long stretches without his medically necessary CLS services. For example, Plaintiff had no CLS services from October 23, 2020 to January 4, 2021. (Exhibit 1). According to Michigan's Medicaid Provider Manual, CLS assists with skill development in activities of daily living, household chores, socialization, communication and relationship-building, and community participation.[2] CLS also includes staff assistance with non-medical care, transportation to medical appointments, medication administration, and preserving health and safety.[3]

According to CK's IPOS, his CLS services are essential to his emotional regulation and community inclusion. (Exhibit 2, pp. 3-4). Staff are supposed to

---

[1] Michigan Medicaid Provider Manual, Behavioral Health and Intellectual and Developmental Disability Supports and Services, p. 70.

[2] Michigan Medicaid Provider Manual, Home and Community-Based Services Waiver Appendix, p. B3.

[3] *Id.*

help CK develop effective communication techniques, teach CK community safety skills like how to cross a crosswalk, and help CK do sensory activities to help regulate his mood and emotions. (Exhibit 2, pp. 3-4). CLS staff are also supposed to help CK develop techniques to express his emotions in a safe and effective manner. (Exhibit 2, p. 4).

Every day that Defendants breach the settlement agreement and fail to provide Plaintiff with his medically necessary services causes Plaintiff irreparable harm in two ways. First, every day without services costs CK progress in learning community integration, communication, and self-expression skills. CK is a teenager, at a crucial stage in his development. Defendants' failure to comply with the settlement agreement slows that development, reducing the chances that CK will meet the goals in his IPOS. Preventing CK from reaching those goals also decreases his chances of being as independent as possible in the future. Furthermore, without CLS staff, CK is unduly isolated in his home, because staff are essential to redirecting CK in the community and teaching CK appropriate community behavior. These failures greatly increase CK's risk of institutionalization, which is the second way Defendants are causing CK irreparable harm.

Defendants, through their subcontractor MORC, acknowledge that CK has a history of hospitalizations resulting from behavioral concerns. (Exhibit 3, p. 1).

Defendants also acknowledge that CK has been successful in living at home since June of 2018, with proper services and supports. (Exhibit 3, p. 1). Notably, June of 2018 was about a month after the parties agreed to the settlement in the original case. Without the appropriate supports and services, CK's risk of hospitalization and institutionalization increased substantially. When CK struggles to express emotions or fixates on something, he can express himself violently. In the past couple of months, he has assaulted his mother and grandmother multiple times. He has destroyed property, including smashing lamps, breaking down doors, and damaging walls. (Exhibit 1).

CK's CLS is supposed to give CK tools to avoid this behavior. ICSS are meant to intervene when those tools fail. The settlement mandates ICSS with response times within an hour, or two hours if mitigating circumstances exist. CK has a crisis intervention plan, designed to prevent physical harm to himself and others. ICSS should respond when CK has a crisis by arriving with a mobile unit, implementing the intervention plan, and deescalating the situation. Instead, ICSS often does not respond to Marisa at all, or responds by telling Marisa to call 9-1-1. Without ICSS to intervene, CK and his family are at risk of physical harm, and CK is much more likely to return to the cycle of psychiatric hospitalizations that precipitated the original suit.

Defendants clearly cause CK irreparable harm by failing to comply with the terms of the settlement agreement. Without services, CK loses progress he cannot regain. He is at increased risk of institutionalization and hospitalization, and is unduly isolated in his home, in violation of the integration mandate under Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act. *See Waskul v. Washtenaw County Community Mental Health*, 979 F.3d 426, 463 (6th Cir. 2020). These harms will continue without preliminary injunctive relief.

### B.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

CK is likely to succeed on the merits. Defendants voluntarily entered into the settlement agreement and this Court approved the terms of that agreement. In that agreement, Defendants agreed to provide ICSS as long as it was medically necessary, with response times of no longer than two hours. (Exhibit 4). Defendants also agreed to provide the CLS, in-home Respite and out-of-home Respite in CK's IPOS. (Exhibit 4). To ensure that provision, Defendant OCHN agreed to enforce contract provisions with MORC requiring MORC to supply its own staff to provide the CLS and/or Respite hours if a sub-contracted provider could not staff the hours. (Exhibit 4).

Defendants have breached the settlement in several ways. As explained above and in Marisa's affidavit, Defendants have either not provided ICSS at all or ICSS response times have been longer than two hours. (Exhibit 1). When

7

contracted providers have been unavailable to provide C.K.'s service hours, MORC has never supplied its own staff to provide the CLS and/or Respite in CK's IPOS, in violation of part 4 of the agreement. (Exhibit 1). In addition, MORC staff indicated to DRM that they were unaware of any contract provision requiring them to do so. Defendant OCHN never entered into the contract provisions described in the settlement, and certainly never enforced those provisions. If they did enforce the provisions, MORC would be supplying its own staff to provide the CLS and Respite in CK's IPOS.

CK has not had his CLS hours staffed consistently since March of 2020. CK did not have any CLS or in-home Respite from March 2020 until August 10, 2020. (Exhibit 1). CK also went without services from October 23, 2020 to January 4, 2021. (Exhibit 1). On January 19, 2021, CK's service provider once again stopped services. (Exhibit 1). Providers often stopped providing services with no notice. (Exhibit 1). At the time of this filing, there is no schedule for staff starting CLS services again. To comply with the terms of the settlement, OCHN must enforce contract provisions that require service providers to give advance notice before stopping services and MORC to provide their own staff for the hours if providers cannot be found. OCHN complied with neither provision.

OCHN provided DRM with two excuses for why it has failed to comply with the terms of the settlement. (Exhibit 5). First, OCHN claims that because it

"resumed responsibility for maintaining provider network contracts," any settlement obligating MORC to provide staffing is inapplicable. (Exhibit 5). OCHN is a specialty prepaid health plan (PIHP), a Medicaid managed care organization (MCO) under M.C.L. § 400.109f. Under 42 U.S.C. § 1396u-2(a)(1)(B)(i), MCOs provide or arrange for services for enrollees. M.C.L. § 330.1208 requires that OCHN provide mental health services to individuals with developmental disabilities or serious mental illness living in Oakland County.

OCHN meets its obligations under those statutes by sub-contracting with other organizations. OCHN sub-contracts with MORC to arrange and pay for CK's services. Normally, MORC would then contract with service providers to provide the services in CK's IPOS. According to OCHN, they now maintain the provider contracts themselves. This does not make the settlement agreement inapplicable. Even if OCHN took over responsibility for maintaining the individual provider network contracts, that does not prevent OCHN from maintaining a contract with MORC that complies with the settlement agreement.

OCHN also contends that the pandemic constitutes *force majeure*, making compliance with the agreement impossible. There are a few problems with this argument. First, the pandemic does not make it impossible to contract with MORC. OCHN violated the settlement because it never contracted with MORC in the first place, well before the pandemic. Therefore, at most, the pandemic constitutes *force*

*majeure* as to the parts of the settlement requiring provision of services. However, Defendant OCHN has not shown this and it is not the case.

The doctrine of *force majeure* excuses performance under a contract when circumstances beyond the parties' control make performance of the contract impossible, through no fault of their own. *Erickson v. Dart Oil & Gas Corp.*, 189 Mich. App. 679, 689 (Mich. Ct. App. 1991). Settlements are contracts, and the legal principles of contracts apply to them. *Hisaw v. Hayes*, 133 Mich. App. 639, 642 (Mich. Ct. App. 1984). A party cannot invoke *force majeure* if it has not used diligence and care to prevent the breach of contract. *See Erickson*, 189 Mich. App. at 688. The pandemic has not made compliance with the settlement impossible and Defendant OCHN has not done its due diligence to prevent its breach of the contract.

Plaintiff is keenly aware of the fact that the pandemic has made things harder on everyone. However, it has not made it impossible to find or hire CLS and/or Respite providers. In fact, Defendant MDHHS' own guidance requires that essential services like CLS and ICSS continue.[4] Services may be provided virtually if there is a clear determination that it is possible to provide the service without a face-to-face encounter. Defendant MDHHS would not require its subcontractors like OCHN to continue services if it was impossible to do so.

---

[4] MDHHS Behavioral Health and Developmental Disabilities Administration, Communication 20-01, Issues March 25, 2020.

Furthermore, Defendant OCHN has not done its due diligence to prevent its breach of the settlement. This is clear from the fact that OCHN breached the settlement long before the pandemic by failing to enter into and enforce the contract provisions with MORC that it committed to. In addition, OCHN claims that it has canvassed all of the service providers in the area in an attempt to find workers for CK. What it has not done is required MORC to use its own staff to cover those hours, as the contract requires. In fact, it doesn't even have the contract with MORC that it committed to. Defendant OCHN can hardly claim impossibility when it has made no good-faith effort to comply with the settlement. Plaintiff is likely to prevail on the merits of his claim because Defendants have breached the settlement agreement and do not have a justification for doing so.

### C. THE BALANCE OF EQUITIES WEIGHS IN PLAINTIFF'S FAVOR.

The balance of equities clearly weighs in CK's favor. The hardships CK has endured and continues to endure without medically necessary services far outweigh any potential hardship to Defendants. Whatever costs associated with the relief requested will likely be substantially less than what the State will spend if CK is institutionalized and/or hospitalized. Further, the relief requested is nothing more than a request that Defendants comply with this Court's Order and the settlement agreement Defendants entered into willingly. CK is simply asking Defendants to provide Medicaid services it committed to providing in the

11

settlement agreement.  The court in *Bontrager v. Indiana Fam. and Soc. Servs. Admin.,* 697 F.3d 604 (7th Cir. 2012) states it well:

> The Medicaid statute was designed to pay for the healthcare costs of the 'most needy in the country.' *Schweiker v. Hogan*, 457 U.S. 569 (1982).  Although we are mindful of potential budgetary concerns, these interests do not outweigh Medicaid recipients' interests in access to medically necessary healthcare.

The balance of hardships clearly weighs in Plaintiff's favor.

### D.      GRANTING THIS MOTION IS IN THE PUBLIC INTEREST.

The public has a strong interest in community integration and ensuring individuals receive appropriate mental and behavioral health treatment and services. The public has a strong interest in seeing that community members are not institutionalized or isolated in order to receive the very services he or she could receive in the home. Aside from an ethical standard, the public interest would be served alone in the cost savings by Defendants providing less costly in-home services to CK.

In addition, the public has a strong interest in settling lawsuits without litigation. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1994). "Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see the agreed terms are fully and timely carried out." *Id.* Defendants did not carry out the terms of this settlement agreement. If the terms of the agreement are not

enforced, the public loses faith in the settlement process, spurring more litigation. Granting this Motion and getting CK medically necessary services is in public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting the following relief:

A. Plaintiff requests this Honorable Court enter a Temporary Restraining Order and a Preliminary Injunction ordering Defendants to immediately provide authorized medically necessary services in Plaintiff's IPOS, to prevent further harm to Plaintiff's development and increased risk of institutionalization as required by the previous settlement agreement.

B. Enter an Order requiring Defendants' specific performance of the terms of the Settlement Agreement, including enforcing the contract provisions to provide CK's CLS and Respite Services.

C. That this Court waive or excuse the filing of any security or bond by Plaintiff.

D. Grant such other relief as it may appear Plaintiff is entitled to or this court deems necessary.

13

Respectfully submitted,

Dated: February 3, 2021          s/Simon Zagata
                                      Simon F. Zagata (P83162)
                                      Chris E. Davis (P52159)
                                      Disability Rights Michigan
                                      Attorneys for Plaintiffs
                                      4095 Legacy Parkway
                                      Lansing, MI 48911
                                      (517) 487-1755

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on February 3, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Dated: February 3, 2021          s/Simon Zagata
                                        Simon F. Zagata (P83162)
                                      Chris E. Davis (P52159)
                                      Disability Rights Michigan
                                      Attorneys for Plaintiffs
                                      4095 Legacy Parkway
                                      Lansing, MI 48911
                                      (517) 487-1755